UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GRANT STITSWORTH, | |
| Plaintiff, | |
| v. | Case No. 3:23-CV-179-CCB |
| FOREST RIVER, INC., | |
| Defendant. | |

**OPINION AND ORDER**

Defendant Forest River, Inc. ("Forest River") hired Plaintiff Grant Stitsworth in October 2019. In March 2020, Stitsworth was called to active duty in the National Guard because of COVID-19. Stitsworth remained on active duty until August 2021. Prior to the conclusion of his service, he alleges that he sought reemployment with Forest River, but was denied. Stitsworth alleges that Forest River violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4311 *et seq*, when Forest River failed to promptly reemploy Stitsworth as required by 38 U.S.C. §§ 4312 and 4313, and that Forest River's failure to comply with these provisions was willful, warranting liquidated damages under 38 U.S.C. § 4323(d)(1)(C).

Forest River moves for summary judgment, arguing that Stitsworth's "failure to reemploy" claim fails as a matter of law because there is no genuine issue of material fact that Stitsworth did not "submit an application for reemployment" as required under USERRA. [DE 28.] Forest River alternatively moves for summary judgment as to Stitsworth's requests for injunctive and equitable relief, and moves for an order holding that Stitsworth's "lost wages" damages be offset by the amounts he earned from other employers during the relevant damages period, and for an order that Stitsworth be precluded from recovering any damages if he does not provide information about amounts earned from other employers during the relevant damages period. [DE 28, 29.]

Stitsworth also moves for partial summary judgment on Forest River's affirmative defense of failure to mitigate damages, arguing that no reasonable juror could conclude that Stitsworth failed to mitigate his damages from July 2021 and December 2021, the only period that Stitsworth seeks damages. [DE 26.]

**RELEVANT BACKGROUND**

The following facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the substantive analysis below.

Stitsworth began working at Forest River, Plant 501, in October 2019. [DE 30-2 at 4-5; DE 30-3; DE 30-4]. That same month, Stitsworth emailed his Plant Manager, Jason Jones, a copy of his anticipated National Guard drill schedule for the upcoming year. [DE 30-5.] In March or April 2020,[1] Stitsworth notified Forest River that he was called to active duty by the U.S. National Guard in response to the COVID-19 pandemic. [DE 30-2 at 13-15; DE 30-6.] Forest River placed Mr. Stitsworth on military leave. [DE 30-6.] On April 9, 2020, Mr. Stitsworth Facebook messaged his Assistant Plant Manager, Jimmy Trovatore, stating that he had been assigned to active duty for 45 days, and sent a follow up message to Mr. Trovatore on May 30, 2020 about a further extension, which was the final message that Stitsworth sent to Mr. Travatore about his active-duty status. [DE 30-2 at 14-15, 22-24; DE-7 at 1-3.]

While on active duty, Stitsworth also periodically communicated with another Forest River employee,[2] Nathanial Brooks, and on August 31, 2020, Stitsworth told Mr. Brooks that his active duty had been extended through September 30, 2020. [DE 30-2 at 24-25; DE 30-7 at 5-10.] On

---

[1] Stitsworth testified that he notified Forest River that he was called to active duty in April 2020. [DE 30-2 at 13-15.] However, the personnel action notice states that Stitsworth was on military leave due to COVID-19, and it's dated March 23, 2020. [DE 30-6 at 2.] The exact date Stitsworth went on military leave in 2020 is not relevant to the subsequent analysis.

[2] The parties dispute whether Mr. Brooks was Stitsworth's "team leader" or whether Mr. Brooks was a "group leader" of a different group in Plant 501, and Stitsworth's "group leader" was another employee, Elliot Denton. No party contends that Mr. Brooks was a plant manager.

January 7, 2021, Mr. Brooks asked Stitsworth if he was coming back, and Stitsworth replied that it "[d]epends on how all this plays out, but they keep extending us. I got all the paperwork for anyone that needs it." [DE 30-7 at 9; DE 30-2 at 27-28.] Mr. Brooks responded "[o]k well we got a new plant manager his name is Kevin Woolwine." [*Id*.] Mr. Woolwine took over as Plant Manager in November 2020, while Stitsworth was on military leave. [DE 30-9 at 15.] Mr. Woolwine has never spoken with Stitsworth. [*Id* at 16.]

In March 2021, a representative from Forest River HR, Wendy Tubicsak, called Stitsworth to inquire about his active-duty status, and Stitsworth stated to Ms. Tubicsak that he had provided his orders to Mr. Brooks. [DE 30-10 at 2; DE 30-2 at 16-18; DE 30-11 at 20.] On April 3-4 2021, Stitsworth and Mr. Brooks had their final exchange prior to Stitsworth's eventual termination, in which Mr. Brooks asked Stitsworth "Hey do you know when and if you comin [sic] back" and Stitsworth responded "No idea. Whenever they don't need us for vaccines anymore." [DE 30-7 at 9-10, DE 30-2 at 29-30.] On July 1, 2021, Mr. Woolwine filled out an internal notice stating that Stitsworth was terminated because he "did not stay in contact nor did he provide documentation for his military leave." [DE 30-15; DE 30-9 at 11-12.]

Stitsworth received a COBRA notice dated July 14, 2021 that included a phone number for Forest River HR. [DE 30-16.] Stitsworth visited Plant 501 after he received the COBRA notice, intending to speak with Mr. Woolwine. [DE 30-2 at 6.] Stitsworth walked through the main entrance of Plant 501 into "an open floor warehouse" and asked someone who "looked like a team leader" if he "knew where Kevin was or if [he]'d be able to speak to him," and that individual said he would "go find him." [DE 30-2 at 7-8.] When the individual had not returned after 15-20 minutes, somebody asked for Mr. Woolwine over the radio. [*Id*.] 10 minutes later, Mr. Stitsworth went to go find Mr. Woolwine [*Id*.] After searching for Mr. Woolwine, Stitsworth found someone who "looked like someone who would be in charge" and said "Hey, are you Kevin?" [*Id*.] The

3

individual reportedly said "Yeah. That's me." [*Id.* at 8-9.] Stitsworth then "asked him about [his] employment status" and the person stated that Stitsworth had been terminated "because [he] never supplied orders[.]" [*Id.* at 9.] Stitsworth offered to go retrieve his paperwork, but the individual conveyed that it was "already done." [*Id.* at 9-10.] Stitsworth requested his job back, but that "nothing happened." [*Id.* at 10.] Stitsworth's visit to Plant 501 after receiving his COBRA notice was the only time after his termination that he contacted anyone at Forest River about returning to Plant 501.[3] [*Id.* at 19-20.] Stitsworth did not contact anyone in HR after he was terminated in July 2021 or anyone else at Forest River after his visit. [*Id.* at 20.] Stitsworth "didn't feel like there was any need to" contact anyone at Forest River after visiting Plant 501 because Forest River had "terminated him and kind of made their intention known." [*Id.*]

Two months after Stitsworth's deposition for this lawsuit, Stitsworth changed his deposition testimony, stating that he viewed a picture of Mr. Woolwine on LinkedIn and learned that Mr. Woolwine was not the manager he spoke to, that he did not know the name of the manager he spoke to, and served an errata sheet changing references in his testimony from "Kevin Woolwine" to "A manager I believed was Kevin Woolwine." [DE 30-19].

Stitsworth was officially released from active duty on August 2, 2021. [DE 30-20 at 24-25.] Stitsworth began another period of active-duty service on August 30, 2021 and served on active duty until December 17, 2021. [DE 30-20 at 10; DE 26-2 at 9.] Mr. Stitsworth was unemployed for a total of four weeks between deactivation and reactivation in the National Guard. [*Id.*] Stitsworth then

---

[3] Stitsworth admits "that Mr. Stitsworth requested reemployment, and that Forest River informed Mr. Stitsworth that he would not be reemployed." [DE 33 at 31.] Stitsworth does not admit or deny the statement that Stitsworth's visit to Plant 501 after receiving his COBRA notice was the only time after his termination he contacted anyone at Forest River about returning to Plant 501, so the Court considers it to be deemed admitted.

4

became employed at Gulf Stream Coach Inc. "almost immediately thereafter" in December 2021.[4] [DE 30-20 at 8-9.]

## STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g*

---

[4] Forest River contends that Stitsworth started employment at Gulf Stream Coach on December 20, 2021, which Stitsworth does not dispute. [DE 33 at 43.] But Forest River does not cite to evidence that Stitsworth started at Gulf Stream on December 20. Stitsworth testified that his first day of work at Gulf Stream was "[t]echnically, December 17th" [DE 30-2 at 25.] Forest River also relies on Stitsworth's amended response to Forest River's first set of interrogatories, but Stitsworth's amended response to interrogatory nos. 3-4 states that he started work at Gulfstream "in December of 2021." [DE 30-2 at 9.] Stitsworth's exact start date of employment at Gulf Stream is not relevant for the subsequent analysis.

*Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## DISCUSSION

### A. Forest River's Motion for Summary Judgment

#### a. Application for reemployment

Congress enacted the USERRA to provide "'prompt reemployment' to those who engage in 'noncareer services in the uniformed services.'" *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998) (quoting 38 U.S.C. §§ 4301(a)(1)-(2)). The USERRA replaced the Veterans' Reemployment Rights Act ("VRRA"), but Congress intended for the case law developed under the VRRA to aid in interpreting the USERRA. *Id.* (citation omitted). The USERRA is to be liberally construed in favor of those who served their country, but the plaintiff bears the burden of proving that he is entitled to reemployment. *Id.* at 676 (citations omitted).

Subject to certain qualifications that are not in dispute here, under USERRA:

(a) [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if—

(1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

(2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

6

38 U.S.C. § 4312(a)(1)-(3).

Section 4312(e) then states that in the case of a person whose period of service in the uniformed service was for more than 180 days, then that person must submit an application for reemployment with the employer not later than 90 days after completing the period of service. 38 U.S.C. § 4312(e)(1)(D).

Forest River argues that there is no genuine issue of material fact that Stitsworth failed to "submit an application for reemployment" as required under USERRA, therefore Stitsworth's "failure to reemploy" claim fails as a matter of law. An "application for reemployment" is not defined by the statute, however USERRA regulations provide that "the employee must notify the pre-service employer of his or her intent to return to the employment position either by reporting to work or submitting a timely application for reemployment." 20 C.F.R. § 1002.115. Further, an "application for reemployment need not follow any particular format." 20 C.F.R. § 1002.118. An employee "may apply orally or in writing" and the "application should indicate that the employee is a former employee returning from service in the uniformed services and that he or she seeks reemployment with the pre-service employer." *Id.* The USERRA regulations also state:

> The application must be submitted to the pre-service employer or to an agent or representative of the employer who has apparent responsibility for receiving employment applications. Depending upon the circumstances, such a person could be a personnel or human resources officer, or a first-line supervisor.

20 C.F.R. § 1002.119.

"An application for reemployment involves more than a mere inquiry." *McGuire*, 152 F.3d at 676 (internal quotations and citations omitted). There is "[n]o bright-line test" in determining whether an employee submitted an application for reemployment, but rather "a case-by-case determination focusing on the intent and reasonable expectations of both the former employee and employer, in light of all the circumstances, has been held to best serve the goals of the Act." *Id.* at

7

676-77 (emphasis omitted) (quoting *Shadle v. Superwood Corp.*, 858 F.2d 437, 439 (8th Cir. 1988)). "An employer who claims lack of actual knowledge does not necessarily win the case. An objective standard governs, and the critical inquiry always must be whether, considering all the circumstances, a reasonable employer would be put on notice that the applicant is a returning veteran who seeks reemployment." *Shadle*, 858 F.2d at 440.

Forest River raises several arguments. Forest River first argues that, even accepting as true that Stitsworth spoke with someone at Plant 501 in July 2021, Stitsworth's actions amounted to nothing more than a "mere inquiry," which is insufficient to submit an application for reemployment under USERRA. Second, Forest River argues that it was Forest River's policy, consistent with what Forest River contends is the standard practice in the RV industry, that Stitsworth speak with his Plant Manager about reemployment, and it is undisputed that Stitsworth did not speak to his Plant Manager, Mr. Woolwine. Third, Forest River argues that, alternatively, Stitsworth could have taken additional "common-sense steps to get his job back," such as emailing his previous Plant Manager Jason Jones, or Wendy Tubicsak in HR, both of whom Stitsworth had been in contact with when he was on active duty, or call HR's number on the COBRA notice.

Forest River principally relies on two Court of Appeals decisions that have addressed whether a returning serviceperson submitted an application for reemployment. The first is *McGuire v. United Parcel Serv.*, 152 F.3d 673 (7th Cir. 1998). In *McGuire*, after examining the reasonable expectations of both the former employee and employer, the Seventh Circuit affirmed the district court's grant of summary judgment for the employer. 152 F.3d at 678. The applicant wrote to his former supervisor about the procedures for getting his job back. *Id.* at 675. The former supervisor, after checking within UPS to find the right contact person, wrote back to the applicant the following: "The law specifies there are no requirements for reemployment. Please touch bases w/ Ed LeBel (HR) upon your return. Look to see you[.]" *Id.* The applicant interpreted the first

8

sentence of his former supervisor's response to mean that UPS was not required to reemploy him, and never contacted HR as instructed. *Id.* In examining the reasonable expectations of the employer, the court found that it was reasonable for UPS, a large employer, to train its supervisors to refer personnel matters to those who are trained to handle them properly, which is what had occurred. *Id.* at 677. In examining the applicant's reasonable expectations, the court found that "[w]e can reasonably expect that if an applicant's former supervisor tells him to contact the personnel department about being rehired, the applicant will understand that the supervisor is deferring to someone who can take action," and it was not reasonable for the applicant to interpret his former supervisor referring him to HR as meaning that UPS was not required to reemploy him. *Id.* at 677-78. The Seventh Circuit held that the applicant did not submit an application for reemployment by giving reasonable notice to UPS that he wanted his job back but emphasized that these causes of action are reviewed on a case-by-case basis, and that the court "should not be heard to say that those returning from the military can only submit applications for reemployment to personnel departments." *Id.* at 678.

Forest River also relies on *Shadle v. Superwood Corp.*, 858 F.2d 439, 440 (8th Cir. 1988), a case the Seventh Circuit cited approvingly in *McGuire*. There, the applicant did not "communicate in any fashion" to his employer about his status or his desire for reemployment. *Shadle*, 858 F.2d at 440. The applicant only visited the guard shack, asked for a job application and to see the personnel manager and plant manager, and was told they were unavailable. *Id.* He later made one phone call asking to speak to the personnel manager and plant manager, and was informed that neither were there. *Id.* The applicant did not otherwise attempt to communicate to his employer about his status or his desire for reemployment within the statutory timeframe required to seek reemployment after the applicant departed from the Navy. *Id.* The Eighth Circuit found that the applicant's actions were "hardly enough to put a reasonable employer on notice that a returning veteran is seeking

9

reemployment" and insufficient to create a factual issue concerning the adequacy of notice to the employer, reversing denial of summary judgment. *Id.*

The Court finds that there is a genuine issue of material fact as to whether Forest River had a reasonable expectation that servicemembers contact their Plant Manager to discuss returning to work. Forest River argues that returning servicemembers are expected to request reemployment from their Plant Manager, and that such expectation is evident because there is a sign taped to Mr. Woolwine's door stating in bold, capitalized letters that "it is your responsibility to call" with Mr. Woolwine's number, and that it is standard practice in the RV industry. But it is undisputed that the purported expectation that returning servicemembers will contact their Plant Manager about reemployment is not a written policy. [DE 32-2 at 5; DE 32-3; DE 36 at 28.] While Forest River's general "Attendance Guidelines" states that an employee must personally notify their "supervisor" for the reason of absence and the expected duration, and Forest River's "Personal Leave of Absence" policy also states an employee should request unpaid personal leave from their "[s]upervisor" [DE 32-3 at 13, 22], it is undisputed that Forest River does not have employees with the title "supervisor," but instead has employees who are "group leaders," "assistant plant managers" as well as "plant manager." [DE 32-8 at 5-6.] Stitsworth had previously spoken about his active-duty status with Mr. Trovatore, an Assistant Plant Manager, and Mr. Brooks who, while the exact title of his position is in dispute, is undisputably not a Plant Manager. Further, it is also undisputed that Stitsworth was on military leave when Mr. Woolwine became the Plant Manager, so it can be inferred that Mr. Stitsworth did not see the sign outside of Mr. Woolwine's office. Unlike *McGuire* where the applicant was explicitly informed the procedures for returning to his employer and no reasonable juror would interpret the instructions for the applicant to contact HR to mean that he could not get his position back, there is a genuine dispute of material fact as what Forest

River's and Stitsworth's expectations were with respect to whom Stitsworth had to inform that he was seeking reemployment with Forest River.

Even if Forest River and Stitsworth had an expectation that returning servicemembers needed to contact a Plant Manager, a reasonable juror could find that this expectation was not reasonable. Mr. Woolwine did not become a Plant Manager until after Stitsworth left for active-duty military service, and Stitsworth and Mr. Woolwine had not met or spoken to each other. Stitsworth spoke to an individual whom he thought was Mr. Woolwine and who gave Stitsworth the impression that he knew who Stitsworth was and the circumstances of his termination, but Stitsworth did not realize until after his deposition that the individual was not Mr. Woolwine. A reasonable juror could find that such a mistake underscores that, under these circumstances, an expectation that a returning serviceperson contact the Plant Manager is unreasonable.

There is also a genuine issue of material fact as to whether it is reasonable to expect that Stitsworth should have taken additional steps to get his job back, and whether Stitsworth's actions amounted to more than a mere inquiry. Forest River's HR representative testified that verbal notice was sufficient. [DE 32-11 at 15]. Whomever Stitsworth spoke to, Stitsworth testified that he asked that individual for his job back. Such efforts are therefore distinguishable from *Shadle*, where the applicant did not communicate to anyone at his employer of his status as a veteran or his intent to reapply. Stitsworth has also put forth evidence that he communicated with other individuals who were not Plant Managers about his active-duty status, so it would be reasonable to infer that someone who appeared to Stitsworth to have authority when he went to Plant 501 could be someone who could handle such matters. Thus, a reasonable juror could infer that Stitsworth sufficiently put Forest River on notice.

Construing the evidence in the light most favorable to Stitsworth, there are genuine issues of material fact as to whether Stitsworth submitted an application for reemployment. Forest River's summary judgment motion is therefore denied as to this issue.

### b. Stitsworth's requests for injunctive relief and report of judgment in federal and state contracts

Forest River also moves for partial summary judgement on the following requests for relief in Stitsworth's amended complaint:

> a. For an injunction preventing Defendant from ever again terminating a servicemember while the servicemember is engaged in active-duty military service, pursuant to 38 U.S.C. § 4323(e);
>
> b. For an injunction preventing Defendant from ever again refusing to reinstate a servicemembers' employment after a servicemember performs military service, pursuant to 38 U.S.C. § 4323(e);
>
> c. For an injunction preventing Defendant from ever again retaliating against any servicemember for taking military leave in conjunction with military duty, pursuant to 38 U.S.C. § 4323(e);
>
> d. For an injunction preventing Defendant from ever again taking any adverse employment action against any servicemember for taking military leave in conjunction with military duty, pursuant to 38 U.S.C. § 4323(e);
>
> e. For an Order requiring Defendant to comply with every aspect of USERRA, pursuant to 38 U.S.C. § 4323(e)[.]

[DE 13 at ¶ 95(a)-(e)].

Forest River argues that summary judgment is proper because Stitsworth lacks standing. The Court agrees with Forest River. Stitsworth is undisputably no longer an employee of Forest River and there is no evidence that he seeks to rejoin Forest River, therefore he lacks standing to request injunctive relief for Forest River to comply with USERRA. *See Arroyo v. Volvo Grp. N. Am., LLC*, No. 12-CV-6859, 2017 WL 2985649, at *16 (N.D. Ill. July 13, 2017) ("[A]n order directing [the employer] to comply with USERRA would not benefit [the plaintiff], raising redressability and

standing concerns.") (collecting cases); *see also Won v. Amazon.com, Inc.*, No. 21CV2867NGGRER, 2022 WL 3576738, at *4 (E.D.N.Y. Aug. 19, 2022) ("[A] plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future."). Stitsworth did not address Forest River's argument in his response, therefore he waived any argument as to this issue. *Beavers*, 756 F.3d at 1059.

Forest River also moves for summary judgment on the following requests for relief in Stitsworth's amended complaint:

k. Order Defendant to report the judgment entered in this case to all United States Government Contracting Officers when Defendant applies for or enters any contract with the United States Government, pursuant to 41 C.F.R. §§ 30-300.66(a) to (c);

l. Order Defendant to report the judgment entered in this case to all Indiana State Government Contracting Officers when Defendant applies for or enters any contract with the State of Indiana, pursuant to 41 C.F.R. §§ 30-300.66(a) to (c)[.]

[DE 13 at ¶ 95(k)-(l)].

Such a request is not provided as an available remedy under USERRA or the USERRA regulations. 38 U.S.C. § 4323(d); 20 C.F.R. § 1002.312. Stitsworth cites to 41 C.F.R. §§ 30-300.66(a)-(c) in his amended complaint to support his requested relief, but the Court cannot locate a regulation under Title 41 of the Code of Federal Regulations with that citation. Title 41 is "Public Contracts and Property Management," and Part 60-300 sets the standards for compliance with the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. § 4212, ("VEVRAA") as well as sanctions and penalties for violation of the Act. 41 C.F.R. §§ 60-300.1; 60-300.66. The Court assumes Stitsworth intended to cite 41 C.F.R. § 60-300.66(a)-(c), although Stitsworth did not respond to Forest River's argument in its response to Forest River's summary judgment motion. But even then, while 41 C.F.R. §§ 60-300.66(a)-(c) provides that a contractor may be debarred from receiving future contracts for failure to comply with the provisions of the Act, it does not provide that such a penalty is available for violations of USERRA.

13

As noted, Stitsworth does not address Forest River's argument in his response and has failed to provide any caselaw where a court recognized such a request for violations of USERRA or other statutory or regulatory authority. There is also no explanation as to how such a notice would make him whole. *See Arroyo*, No. 12-cv-6859, 2017 WL 2985649, at *16-17. Since Stitsworth failed to address Forest River's argument that such a request is improper, he therefore also waives any argument as to this issue. *See Beavers*, 756 F.3d at 1059. The Court thus grants Forest River's motion for summary judgment in part and dismisses those requests for injunctive relief contained in Stitsworth's amended complaint, DE 13 at ¶ 95(a)-(e), (k)-(l).

### c. Lost wages damages

As to available remedies under USERRA, it provides that a court "may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(B). The court may award an additional amount equal to the amount awarded under § 4323(d)(1)(B) as liquidated damages if the employer's failure to comply with USERRA was willful. 38 U.S.C. § 4323(d)(1)(C).

Stitsworth seeks damages for the period between the date he contends he should have been reemployed by Forest River in July 2021[5] to the date he found comparable employment at Gulfstream in December 2021. [DE 26 at 1] Stitsworth was released from active duty on August 2, 2021. He returned to active duty on August 30, 2021 and was released from active duty on December 17, 2021. Stitsworth began working at Gulfstream after he was released in December 2021. Forest Rivers moves the Court for an order that Stitsworth's "lost wages" damages "must be

---

[5] Stitsworth asserts that his damages period began on July 6, 2021, citing to Stitsworth's deposition where he testified that he met with Mr. Woolwine "around July 5th or 6th." [DE 26-2 at 13.] But Stitsworth also testified that he visited Plant 501 after he received his COBRA notice [DE 30-2 at 6], and the COBRA notice is dated July 14, 2021. [DE 30-16.] For purposes of ruling on the motions for summary judgment, the exact date in July 2021 that Stitsworth's alleged damages period began is not relevant.

offset by the amounts he earned from other employers during his 5.5 month damages period." [DE 28 at 2.] Stitsworth argues that Forest River waived its argument that any award of backpay should be offset by his earnings from his military service because Forest River did not raise a "setoff" affirmative defense in its pleading. Stitsworth also asserts that "Mr. Stitsworth only returned to active-duty military service to mitigate his damages after Forest River terminated his employment and refused to reemploy him. Under these circumstances, military pay cannot be considered a 'setoff.'" (emphasis omitted) [DE 32 at 35].

The parties do not cite any Seventh Circuit caselaw that has addressed whether a lost wages award for violation of USERRA is properly reduced by wages received from military service earned in mitigation of damages, and the Court cannot find any. But other circuits have addressed this question. In *Harwood v. American Airlines, Inc.*, the Fourth Circuit upheld the district court's determination that the backpay award should be offset by the serviceperson's Air Force income because such payment was for "services that [the serviceperson] would not have been able to complete or that would have required leave from [the employer] but for the USERRA violation." 963 F.3d 408, 419 (4th Cir. 2020).

In *Hance v. Norfolk Southern Ry. Co.*, the Sixth Circuit vacated the district court's award of damages to a serviceperson who was employed by the National Guard, finding that "it does appear that the district court should have offset the award of back pay…[b]ecause Hance was working full-time for the Guard during this period, the district court's award provided Hance with damages equivalent to the earnings from two full-time jobs." 571 F.3d 511, 521 (6th Cir. 2009) (remanding to district court for further fact-finding on amount of damages needed to make plaintiff whole). The court, however, found it appropriate not to offset the plaintiff's back pay by the amount earned from his part-time National Guard pay because, prior to discharge, the plaintiff had received part-time pay from the National Guard in addition to his full-time work with the defendant employer. *Id.*

15

at 520. The court explained that "if one can hold his supplemental job and his desired full time job simultaneously and there is reason to believe he will do so,…[t]hose earnings would be independent of the position sought and should not be taken into account in back pay calculations." *Id.* (internal quotations and citations omitted). Another district court found that military service is equivalent to finding other employment, and that it may be appropriate to offset an award of damages by the reenlisting employee's military pay. *Davis v. Crothall Servs. Grp., Inc.*, 961 F. Supp. 2d 716, 732 (W.D. Pa. 2013).

Further, USERRA's regulations contemplate a serviceperson mitigating damages by serving in the uniformed services. Under USERRA, if other statutory requirements are met, a serviceperson is entitled to reemployment rights if the cumulative length of the absence with their employer does not exceed five years. 38 U.S.C. § 4312(a)(2). Under USERRA's regulations, one of the exceptions to the five-year limit on service is that "service performed to mitigate economic harm where the employee's employer is in violation of its employment or reemployment obligations to him or her." 20 C.F.R. § 1002.103(b).

Stitsworth does not provide any caselaw or other authority that supports his assertion that a lost wages award cannot be reduced by military service wages earned to mitigate damages, or that the reduction of lost wages by income earned in mitigation of damages must be raised as a "setoff" affirmative defense. Stitsworth cites to *Alston v. King*, 157 F.3d 1113 (7th Cir. 1998) in support, but that case is inapposite. There, the plaintiff, a Gary Sanitary District employee, sued the District and the Mayor of Gary following his termination. *Alston*, 157 F3d at 1115. The issue was whether a damages award that set-off an amount that the plaintiff was alleged to have misappropriated from the City was proper. *Id.* at 1116. In other words, the case does not concern the reduction of a lost wages award by military pay earned to mitigate damages.

16

Stitsworth also invokes the collateral source rule to argue that a tortfeasor may not deduct from damages other money a victim receives from independent sources, citing to *Hunter v. Allis-Chalmers, Cor.*, 797 F.2d 1417, 1428 (7th Cir. 1986), and *E.E.O.C. v. O'Grady*, 857 F. 2d 383, 389-91 (7th Cir. 1988). But the Seventh Circuit explained that the collateral-source rule, otherwise known as the collateral-benefits rule, precludes a tortfeasor from deducting "the money that the victim receives by virtue of medical or other insurance that he may carry" from a damages award. *Hunter*, 797 F.2d at 1428. In *Hunter*, the court found that the collateral-benefits rule also forbids a deduction for unemployment benefits in a civil rights damage suit, and that the district court did not abuse its discretion in not allowing an employer to deduct unemployment benefits from the back pay award. *Id.* The Seventh Circuit also extended the collateral source rule to prevent deduction of pension benefits received from a back pay award. *O'Grady*, 857 F.2d at 391. Neither case supports Stitsworth's assertion that the collateral source rule applies to income received from other employment, including employment with the armed services, nor can the Court find any caselaw that supports Stitsworth's argument.

Accordingly, the Court is persuaded by the Fourth and Sixth Circuit decisions in *Harwood* and *Hance* and finds that mitigating wages from employment with the armed services may reduce a lost wages damages award under USERRA. But the Court denies Forest River's motion for summary judgment to offset the amounts Stitsworth "earned from other employers[6] during his 5.5 month damages period" because, as noted by the court in *Hance,* an offset of the plaintiff's back pay may not be appropriate when, prior to discharge, the plaintiff had received part-time pay from the National Guard in addition to his full-time work with the employer. *See* 571 F.3d at 520. The

---

[6] Forest River requests that the Court offset income from other "employers" but it is not clear that Stitsworth had other employment in addition to his position with the National Guard during the alleged damages period. The parties only refer to Stitsworth's employment with the National Guard in its briefing. To the extent Forest River is seeking to reduce any lost wages damages award by the income Stitsworth received from employers other than the National Guard during the relevant damages period, there is also a lack of evidence as to the nature of any such employment.

17

Court cannot determine, based on the record, whether Stitsworth was in a similar position as the plaintiff in *Hance* and had supplemental income in addition to his full-time work with Forest River. There is also a lack of evidence as to Stitsworth's earnings, if any, from the National Guard when he was working full-time at Forest River, and his earnings during the alleged damages period.

Relatedly, Forest River also requests in its summary judgment motion that the Court "order that Mr. Stitsworth be precluded from recovering any damages if he does not provide information about the amounts earned from his other employers." [DE 29 at 26.] The Court denies Forest River's motion for summary judgment as to this request because it is premature.

### B. Stitsworth's Motion for Summary Judgment

Stitsworth also moves for summary judgment on Forest River's failure to mitigate damages affirmative defense, which Forest River pleads in its Answer as the Fifth Affirmative Defense, DE 14 at 19. [DE 26.] Stitsworth states that he is only seeking damage from July 2021 and December 2021. [*Id.* at 1.] In response, Forest River does not oppose the motion, and states that it withdraws its failure to mitigate defense and will no longer pursue it. [DE 31 at 1.] The Court therefore grants Stitsworth's motion for summary judgment as to Forest River's Fifth Affirmative Defense. [DE 26.]

## CONCLUSION

Accordingly, Forest River's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. [DE 28.] The motion is **GRANTED** as to those requests for relief contained in Stitsworth's amended complaint at DE 13 at ¶ 95(a)-(e), (k)-(l), and those requests are hereby **DISMISSED**. Forest River's motion for summary judgment is **DENIED** as to Stitsworth's failure to reemploy claim under USERRA. Forest River's motion is also **DENIED** to the extent it seeks a determination that any lost wages award must be offset by income Stitsworth earned from other employers during the relevant damages period, and to the extent it seeks a determination that

Stitsworth is precluded from recovering any damages if he fails to provide information about his income during the relevant damages period.

Stitsworth's motion for summary judgment is **GRANTED**. [DE 26.] Forest River's failure to mitigate damages affirmative defense is **DISMISSED**.

SO ORDERED.

September 19, 2024

                                                                  /s/ *Cristal C. Brisco*  
                                                                    CRISTAL C. BRISCO, JUDGE  
                                                                    UNITED STATES DISTRICT COURT